Cecil A. HAMMAN, Appellant,

v.

COOPERATIVE REFINERY ASSOCIATION, Respondent.

No. 23793.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1963.

---

Irving Achtenberg, Kansas City, for appellant.

Keith Martin, Kansas City, for respondent.

---

MAUGHMER, Commissioner.

Plaintiff, Cecil A. Hamman, asserts that he was the legal assignee and lawful owner of certain oil royalties or working interests amounting to $989.26, accruing to one William H. Bass, from August 1, 1958 to October 1, 1959, and held by defendant Cooperative Refinery Association; that defendant company refused to honor the assignment or pay any part of the funds to him, but rather paid same to the Internal Revenue Service of the United States in response to two levies served upon defendant by Internal Revenue against the interest of the said William H. Bass and dated July 30, 1959 and October 2, 1959. By this action plaintiff seeks recovery of the $989.-26 with interest.

Defendant admits it made the payments to Internal Revenue as alleged, but denies that plaintiff's purported assignment was in and of itself a complete and legally effective transfer of the Bass funds, being held by the company, so as to authorize or even permit defendant to pay same to plaintiff. Defendant asserts further that a "Transfer Order" signed by both the buyer and the seller, that is, by both Hamman and Bass and delivered to defendant, is a prerequisite requirement, essential to a complete, valid and effective transfer of ownership.

A jury was waived and the cause was tried to the court upon a written Stipulation of Facts. The findings and judgment were for defendant and plaintiff has appealed.

The Stipulation of Facts, together with the exhibits, reveals that in 1954, William H. Bass acquired the oil leases from which the disputed funds were derived, and contracted with defendant company to sell the oil production. Respecting defendant's contention that a "Transfer Order" describing the interest and signed by both Buyer and Seller, was necessary to validly pass Bass's interest, the written Stipulation of Facts, upon which the case was tried, contains the following: "These documents (Transfer Orders) are required by defendant in the regular course of business to transfer interests in leases".

Various assignments, transfers and sales covering portions of the Bass interests were thereafter made. It is undisputed and the case was tried on the basis that proceeds totaling $989.26 accrued to the interest still held by Bass from August 1, 1958 to October 1, 1959. It was also agreed that Internal Revenue Service, on July 30, 1959, and again on October 2, 1959, levied against the interest of William H. Bass in said funds and that responsive thereto defendant paid to Internal Revenue Service $827.50 under the first levy and $161.76 under the second levy, in the total amount of $989.26.

It appears further that plaintiff and Bass were formerly partners, doing business as Bass and Hamman Oil Company, but on July 22, 1957, dissolved the partnership. Apparently as a part of this dissolution, Bass (and his wife) assigned to plaintiff Hamman, the Bass interest in the oil leases involved herein. As an indication that both Assignor Bass and Assignee Hamman understood that additional forms were required, or at least might be required, to convey the interest and transfer the right to receive payment, the Assignment carried this clause: "Bass further agrees to execute any and all departmental forms which may be necessary to effectuate the purposes of this Agreement". By letter dated September 11, 1958, plaintiff's attorneys informed defendant of the assignment, claimed the "overriding royalty" for Mr. Hamman,

enclosed copy of the assignment and made this request: "Please cause transfer orders to be issued immediately". While defendant presumably had "Transfer Order" forms available, manifestly it could not cause proper and effective "transfer orders to be issued" since signatures of both buyer and seller were required thereon. In any event, no Transfer Order was executed and delivered to defendant prior to its payment to Internal Revenue.

Possibly Bass refused to execute any further forms or possibly plaintiff was not fully satisfied with his title to the Bass oil interests. In any event, he instituted legal proceedings in Illinois, seeking by court decree to acquire the interests. Thereafter, on October 25, 1959 (after the date of the second government levy) Bass executed a document styled "Assignment of Overriding Royalty" by which he again conveyed his interest to plaintiff. This assignment recites:

"This Assignment shall be effective as of October 1, 1959 * * * and it is understood that the Internal Revenue has attached or has a lien against the impounded proceeds credited to the said Overriding Royalty Interest of the Assignors in leases aforesaid; it being the intent, purpose and meaning of this Assignment that the Assignee shall have the proceeds credited to said Overriding Royalty Interests which are impounded and which will hereafter accrue, exclusive of whatever proceeds the Internal Revenue Department has a prior lien against or has taken to its account".

Then followed a statement that nothing in the Assignment shall prejudice Assignee's claim against funds taken by Internal Revenue or against which it claims. It will be noted that the date on which this assignment was executed (October 25, 1959) was after the date of the last government levy (October 2, 1959). Subsequently, Transfer Orders were signed, delivered and payments thereafter made to Hamman.

Even those not directly engaged in the oil industry understand that royalties and overriding interests in oil leases are frequently split into fractional shares, re-split and are traded—bought and sold on a wide scale—somewhat like shares of corporate stock are traded, but mostly on an individual or over-the-counter basis. Because of this widespread and common trading practice, the producing company, seller of the oil, or holder of the funds, would be on dangerous ground if it were required, at its peril, to determine the validity and decide the equities involved in every sale, assignment or transfer of leasehold interests or fractional royalty shares. And if such companies were required to hold up disbursements pending the outcome of interpleader actions or other court determinations establishing legal ownership, the result would be interminable delay, numerous slowed up payments and great expense. To overcome, if not eliminate, such unhappy results, the practice and custom has arisen in the oil industry, that where there is such a sale by deed, assignment or otherwise, the company must be furnished with a Transfer Order, signed by both buyer and seller, before it is either authorized or required to pay to the transferee or assignee. The situation is similar to that arising when General Motors declares a dividend payable January 1 to "holders of record on December 20th", where, even though the stock might have been assigned on December 15th, unless the transfer was effectuated on the books of the company or its transfer agent by December 20, the dividend would go to the assignor. The procedure as followed by the oil companies is described as follows by this court in Wood et al. v. White Eagle Oil & Refining Co., Mo.App., 274 S.W. 894, 895, 896:

"Intervener's evidence further shows that the buyer of the oil upon taking over the production requires what is called a 'division order' to be signed by the owners of the oil. This division order is furnished by the buyer and contains a form for the name and correct description of the land. It re-

quires that the royalty interest be specified in the order, together with the working interest, and is signed by the parties interested. When it is returned to the buying company, it is sent by it, with a complete abstract of title covering the property brought down to date, to the buyer's attorney, who examines the abstract, and, if it is found that the division order corresponds with the title, the order is approved and payment for the oil purchased is made in accordance with the information contained in the division order. *Thereafter if any one sells a part of his interest, it is required that the seller and purchaser sign what is called a 'transfer order' showing what interest has been transferred and thereafter payment of the oil is made in accordance with the division order as amended by the transfer order."* (Italics ours).

In our particular case Bass had furnished defendant with a transfer order under which payments had been made to him and he was fully familiar with the requirements. Plaintiff, as Bass's partner and as one engaged in the oil industry, probably also knew about it. In addition, the written agreed Stipulation of Facts upon which the case was tried conceded: "These documents (transfer orders) are required by defendant in the regular course of business to transfer interests in leases".

On appeal plaintiff takes the position that the assignment by Bass to plaintiff amounted to at least an equitable assignment, that defendant had actual notice thereof, that plaintiff's claim had priority over the federal levies, and that at least defendant should have held the funds pending final judicial decision as to legal ownership.

We think there would be much merit in plaintiff's position as applied to the usual instance of moneys being held by a stakeholder. But in this case plaintiff is confronted with the custom and practice of the oil industry. Even if he could successfully surmount that obstacle there is the Stipulation which he entered into which acknowledged that a transfer order is *required* to transfer the interest. There was no such transfer order and this, too, is admitted. That plaintiff knew the transfer of Bass's interest to him was incomplete is indicated by (a) the provision in the first assignment for the execution of other "departmental forms"; (b) by the acknowledgment of the government lien in the second assignment; (c) by making the effective date of the second assignment October 1, 1959 and (d) by finally procuring the required Transfer Order.

We believe that the liens of Internal Revenue which became effective when the levies were made, were impressed upon funds which were standing in the name of Bass and which had not been effectively transferred by him, insofar as defendant company is concerned, to plaintiff or anyone else. Therefore, defendant company was not only justified in responding affirmatively to the government liens but was required to do so. We believe that in this situation, and particularly under this Stipulation as to Transfer Orders being a necessary prerequisite, it is unnecessary to go into the law of equitable assignment and discuss the cases cited by plaintiff on that question.

We find no error, concur with the findings of the trial court and the judgment is affirmed.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur, including HIGGINS, Special Judge.

SPERRY, C., not sitting.